396 So.2d 1197 (1981)
BREVARD COUNTY SCHOOL BOARD and the Hartford Insurance Group, Appellants,
v.
Robert C. WALTERS, Appellee.
No. WW-217.
District Court of Appeal of Florida, First District.
April 21, 1981.
*1198 Richard H. Weisberg of Cooper & Rissman, Orlando, for appellants.
Frank R. Pound, Jr. of Lovering, Pound & Lober, Cocoa, for appellee.
ROBERT P. SMITH, Judge.
The employer and carrier appeal from a commissioner's order awarding a $37,000 fee to a lawyer who achieved a $50,000 lump sum settlement for his claimant client. The fee is equal to 74 percent of the compensation award. After a complete review of the record we find the award excessive on its face and unsubstantiated under the criteria set forth in Lee Engineering & Constr. Co. v. Fellows, 209 So.2d 454 (Fla. 1968). We reduce the fee award to $25,000.
The fee payable to claimant's counsel in this case is properly assessed at an amount greater than the $8,250 indicated by the percentage-of-benefits formula enacted in Section 440.34, Florida Statutes (1979). By Lee Engineering standards the significant elements of a reasonable fee in this case are the time and labor required; the novelty and difficulty of the questions presented, and the skill required; the contingency of the fee; and the benefits achieved.
Claimant's lead counsel estimated the amount of lawyer time devoted to claimant's representation at 300 hours. Of that total, 138 hours were recorded by an associate who, at the time she did that work, had been admitted to practice for as few as 15 months and as many as 32 months. The remaining 162 work hours are estimated only, not recorded. Nor are those 300 hours adequately explained in terms of effective work on the workmen's compensation claim. In light of claimant's emotional problems, much of the time spent by claimant's lawyers looks very much like the "handholding" which, though inevitable to some extent in any representation, was held not compensable in Kelly Tractor Co. v. Jarrell, IRC Order 2-3018 (Aug. 19, 1976), cert. den., 348 So.2d 949 (Fla. 1977). The absence of reliable time and work records makes it impossible to identify any extraordinary personal counseling and to differentiate between that and necessary legal services. It should not be considered beneath the dignity of fine lawyers to keep time records if, as is the case under Chapter 440, they aim for someone other than their client to pay the fee. Because of legitimate questions not answered on this record, the fee awarded of more than $100 for every hour claimed cannot be sustained.
This representation required a moderately high degree of lawyerly skill and perseverance. The nature of the claim itself was unusual. Due to high noise levels associated with his work as a band director in a public school, claimant suffered a hearing loss which entirely and permanently destroyed his ability to continue in that work, and in consequence he suffered a psychological reaction which was further disabling. The employer and carrier made no concession of compensability until it initiated settlement negotiations in December 1979, while appealing the deputy's October 1979 order awarding permanent total disability benefits. Due to the nature of the claim and the employer/carrier's resistance virtually throughout, the element of contingency enhances the fee payable in this case. The *1199 contingency lessened, however, in 1978, when the deputy commissioner found the claim compensable either as an industrial injury or as an occupational illness.
The vastly experienced deputy stated in his fee order that this was "one of the most complex and challenging cases I have observed." While we find that statement somewhat surprising, considering the variety of complex but compensable claims we on this court have encountered in our brief experience with Chapter 440, we must and do yield some deference to the deputy's assessment of the case. It does not follow, however, that in workmen's compensation cases lawyerly skill has become so rare, and the likelihood of payment for professional services has become so remote, as to justify a 74 percent contingent fee.
It appears that the deputy's fee award was heavily weighted by his consideration of the benefits achieved for claimant by his lawyer's representation. In this the deputy erroneously considered the $50,000 lump sum settlement, approved on joint petition by the deputy in February 1980, as equivalent or even superior to the compensation award made by the deputy's order of October 1979, which likewise awarded an identical fee of $37,000. That earlier $37,000 fee award was based largely on the award of past and future benefits having a stipulated present value, "depending on various contingencies," of between $124,000 as estimated by the carrier's counsel, and $137,000, including $78,550.11 in future permanent total disability benefits, reduced to present value, as estimated by claimant's counsel. That compensation order of October 1979 was on appeal to this court, raising all antecedent issues including compensability, when the parties agreed to a lump sum settlement of $50,000, subject to approval by the deputy commissioner.
In reawarding a $37,000 fee by the order now on review, the deputy commissioner gave enhanced value to the $50,000 paid in hand, comparing it to the present value of the periodic future payments awarded in October 1979, because he felt that the settlement fund could be invested to produce income greater than the earlier periodic award, while leaving the $50,000 corpus to pass intact through claimant's estate at his death. Thus, the deputy stated:
I also find that because of the prevailing economic conditions, the claimant will probably receive more cash benefits from the $50,000.00 lump sum settlement, than he would have received with the "payout" at his $105.00 a week compensation rate.
The deputy explained how in his judgment the $50,000 cash settlement had greater value than the benefits payable under the October 1979 compensation order:
I take judicial notice of the economic conditions and the money market as of February 5, 1980, the date the claimant received the $50,000.00 lump sum. Investment of the lump sum could provide the claimant interest income (at 15%) of $144 a week, leaving the principal of $50,000.00 intact. An interest rate of only 11% would produce more than $105.00 a week. I also take judicial notice of the Statutory provisions providing for the termination of compensation at the death of the claimant, which could have eliminated any benefits to claimant, absent the lump sum settlement.
I find that with the prevailing money market at the date of settlement, and assuming a normal life span for the claimant, he could receive $144.00 weekly for 22 years, totaling $170,000.00 in interest on the $50,000.00 settlement. Such an investment would leave the $50,000.00 intact, and the claimant would have enjoyed total benefits of $220,000.00. Had the claimant not accepted the lump sum settlement, he would have been relegated to a $105.00 a week compensation rate and again assuming a normal life span, would have received in benefits, $120,000.00 in weekly payments, with no principal for his estate at death... .
The deputy added a cautionary word against accepting his income projections as "certain or absolute," but his reservations concerned the difficulty of estimating an exact rate of return, not the legitimacy of *1200 the method used to find that $50,000 ordered paid in cash in February 1980 was more valuable than the stipulated present value, amounting to between $124,000 and $137,000, of past and future benefits ordered in October 1979. And while the deputy thus undertook to show the future earning power of the $50,000 paid in hand pursuant to the February 1980 order, the deputy neglected to project similar future earnings for the $16,620.79 cash awarded by the October 1979 order for past due benefits and penalties.
Assuming testimony by witnesses could lawfully support this method of bolstering the $37,000 fee reawarded, no testimony in this record supports the manner in which the fee was calculated and justified. Based on the earlier award of between $124,000 and $137,000 in present value to claimant, four lawyer witnesses then vouched for a fee of between $20,000 and $38,000. Based on the final award of $50,000, two of those witnesses lowered their estimates to a range of $10,000 to $12,000; and claimant's only independent lawyer witness, who actually increased his prior estimate from $38,000 to $39,200, said "it doesn't make any difference what the settlement figure was," whether $25,000 or $250,000.
We are of the opinion that the "money market" earning capacity of the $50,000 settlement has no place either in the deputy's approval of such a settlement, Section 440.20(10), or in assessing the value of that settlement for purposes of fixing a fee for claimant's attorney. Considering such an element as a "benefit" factor builds into the attorney's fee, payable now and in cash, a future inflation factor which the "money market" anticipates and recognizes by high interest rates payable for the future use of money. It is one thing, and a proper thing, to value a lawyer's services in the light of inflationary factors directly bearing now on the amount of a reasonable fee; but it is another thing, in our view impermissible, to factor into the fee, as an enhancing "benefit" achieved for the client, the earning power of the settlement fund over the next 20 years.
This Court in Court of Flags v. Outland, 382 So.2d 443 (Fla. 1st DCA 1980), disapproved a lump-sum advancement ordered on the claimant's petition, and over the carrier's objection, which was justified as enabling claimant to make more money on the same "money market" whose interest rates influenced the fee in this case. We held that "estate planning or money market considerations" are not among the relevant factors authorizing a Section 440.20(10) advancement. The separate concurring opinion in Court of Flags elaborated, 382 So.2d at 445:
If the capacity of money to earn more in passive investment than the discount rate were reason enough to commute the periodic payments which are characteristic of the compensation system, then all awards to financially prudent claimants would be commuted in inflationary times. This cannot be. We do not permit an ill octogenarian to "beat the actuarial tables" by lump-summing an award of lengthy period payments. 3 Larson, The Law of Workmen's Compensation, Section 82.72 at p. 15-580 (1976). Neither is it sufficient for lump-summing that, when credit is expensive, the claimant as lender can beat the statutory discount rate. (Robert Smith, J., concurring)
In the case now before us the claimant and his attorney did not represent to the deputy in the joint petition for lump sum settlement that they considered the $50,000 settlement had a benefit to claimant equal to or greater than the periodic benefits to be commuted. Nothing was said in that petition about the benefit to claimant of "economic conditions and the money market as of February 5, 1980." On the contrary, claimant and his counsel represented that the employer/carrier had appealed the October 1979 compensation order and:
The claimant has been advised of his right to allow the Deputy Commissioner's rulings to be considered by the appellate tribunal, and that if the orders were upheld he could receive more benefits than those provided herein... .
*1201 The joint petition for lump sum settlement represented that the parties desired to settle the claim on the basis of 40 percent of the permanent total disability rate, the other 60 percent of claimant's disability being "due to medical causes unrelated to his alleged industrial injury." We do not wish to press this seeming concession too far, recognizing that some kind of acceptable Section 440.20(10) rationale was necessary for a settlement that was desirable on other grounds but which could not be simply bargained for and effectuated. Yet that representation surely must be held to militate against the later argument that claimant was benefited as well or better by the February 1980 order as by the October 1979 order.
Thus we disregard any hypothetical "benefit" to claimant of having received a lump sum settlement during inflationary times. That eliminated as a fee factor, we are left with a record in which claimant's counsel devoted a very substantial but undocumented amount of time to a professional undertaking having a contingency, requiring first-rate lawyerly skills, and ending in a good result. Considering all the evidence, we think the highest fee that can be justified for producing the $50,000 lump sum settlement is $25,000. We therefore reduce the fee to $25,000.
REVERSED.
MILLS, C.J., and WILLIAM C. OWEN, Jr., (Retired), Associate Judge, concur.