488 So.2d 93 (1986)
BREVARD COMMUNITY COLLEGE and Gallagher-Bassett Insurance Service, Appellants,
v.
Anderson BARBER, Appellee.
No. BA-255.
District Court of Appeal of Florida, First District.
April 8, 1986.
Rehearing Denied June 4, 1986.
*94 Thomas A. Moore, of Pitts, Eubanks, Hannah, Hilyard & Marsee, Orlando, for appellants.
O. John Alpizar, Palm Bay, and Bill McCabe, of Shepherd, McCabe & Cooley, Orlando, for appellee.
ZEHMER, Judge.
The employer, Brevard Community College, and its servicing agent, Gallagher-Bassett Insurance Service, appeal a final order entered June 28, 1984, awarding claimant an attorney's fee upon a finding that the carrier acted in bad faith regarding the handling of claimant's claim and that, as a result, claimant suffered an economic loss. § 440.34(3)(b), Fla. Stat. (1983). Appellants' points on appeal (1) contend that the deputy commissioner erred in compelling on the bad faith issue the production of certain documents that were privileged as attorney-client communications or as work product, (2) challenge the fairness of the deputy's in camera inspection of such documents, (3) complain that the evidence is insufficient to support a finding of bad faith, and (4) assert that the $20,000 fee award is not supported by competent, substantial evidence and is excessive as a matter of law. Although the deputy's handling of the discovery issues is not without error, we nevertheless conclude that such error is harmless and does not affect the validity of the order entered. Finding no merit to the remaining points, we affirm.
Claimant, Anderson Barber, sustained an injury to his low back in the course of his employment with the college on December 8, 1982. His injury and claim were accepted as compensable, and benefits were voluntarily *95 authorized and paid by the employer and servicing agent during the period claimant received treatment. The parties agreed that claimant reached maximum medical improvement on June 10, 1983, but the doctor imposed substantial restrictions on his work activities. The employer and servicing agent decided these restrictions were not substantial enough to prevent claimant from performing all work and, after supposedly offering claimant work within his limitations at his former position, unilaterally suspended payment of compensation benefits on August 31, 1983. Claimant twice returned and attempted to perform the work during September but, because of his injuries, was unable to perform his assigned duties.
On August 26, 1983, claimant's counsel filed a claim seeking permanent total disability benefits or, alternatively, wage-loss benefits. Because the employer had omitted certain fringe benefits in calculating average weekly wage, he also sought an adjustment increasing his average weekly wage and compensation rate and asked for interest, penalties, costs, and attorney's fees. All claims were controverted by the employer and servicing agent, and the matter was heard in January 1984. The deputy commissioner entered an order on February 16, 1984, finding claimant permanently and totally disabled from September 1, 1983, and granted all relief requested by claimant. This order was not appealed. No benefits had been paid by the employer and servicing agent between August 31, 1983, and the date of this order.
As required by section 440.34(3)(b), a separate hearing on claimant's request for attorney's fees was set for May 9, 1984. Prior to this hearing, claimant's counsel engaged in discovery on the issue of bad faith. At the deposition of the servicing agent's adjuster in charge of this claim, claimant's counsel sought production of the adjuster's entire file, less whatever documents the adjuster and counsel for the employer and servicing agent considered to be privileged as attorney-client communications or work product. The adjuster removed a number of documents and the deposition was adjourned to allow claimant's counsel to obtain an in camera inspection of these documents by the deputy commissioner. After reviewing the documents, the deputy orally granted claimant's motion in part and denied it in part. Approximately fifteen of the documents previously removed by counsel were made available by the deputy to claimant's counsel for his review at the hearing. Immediately following the hearing before the deputy, the deposition of the adjuster was completed. The attorney's fee hearing was held May 9, as scheduled. On June 28, 1984, the deputy entered an order awarding a fee in the amount of $20,000, based upon extensive findings of fact by the deputy commissioner, which we summarize as follows:
1. The employer and servicing agent improperly determined claimant's average weekly wage and compensation rate by omitting certain fringe benefits from the calculations. This information was exclusively within the possession of the employer, and although claimant's initial claim (filed in August) raised this issue, the servicing agent initiated no inquiry of this matter until November 1983. It was not until the hearing in January 1984 that the employer and servicing agent conceded they had incorrectly determined the average weekly wage. "Under the circumstances, a delay of almost five months in investigating the claimant's correct compensation rate is totally unreasonable" (R. 820).
2. Claimant's physician discharged him upon his reaching maximum medical improvement with twenty percent permanent physical impairment of the body as a whole and specific work limitations and restrictions. The evidence indicates that claimant was thereafter terminated by the employer and that "it was not until after claimant threatened to `sue' the college, that attempts were made to specially create a position at the college for the claimant" (R. 821).
3. The deputy found "particularly disturbing" the destruction of correspondence and file material by the servicing agent, *96 especially a letter purporting to terminate claimant from the college's employment "after claimant threatened to take legal action against the employer" (R. 821).
4. The employer created a job for claimant solely as a defense to the claim that the job exceeded claimant's physical capacity and limitations and was not "created in good faith with the best interest of the claimant in mind" (R. 821-23).
5. The adjuster handling the claim testified that by December 1983 she had recommended to the employer that claimant be accepted as permanently and totally disabled; yet the employer and servicing agent "forced the claimant to go to trial and prove the obvious" and "vigorously defended" the claim despite the adjuster's recommendations of permanent total disability. The adjuster admitted that she was a trained adjuster and "considered the possibility that claimant may be permanently and totally disabled early in the claims process" (R. 822).
6. Claimant was paid nothing between September 1983 and the date of the hearing. The wage-loss forms filed by claimant were controverted each month without any investigation whatsoever of the claim or inquiry by the employer and the servicing agent; rather, the employer and servicing agent:
[C]ontinued to hide behind the specially created job even though the job exceeded claimant's physical abilities. They ignored claimant's complaints of pain and difficulty with performing the job. They also ignored claimant's physician's records indicating that claimant's pain medication had been increased and the doctor's statement that claimant's job may be more than he can handle.
(R. 822-23)
7. Concerning the refusal to pay any amount of wage-loss benefits during this period, the order recited:
At the very least, the employer/carrier in this instance should have paid claimant wage loss benefits if they were genuinely interested in investigating claimant's claim for permanent total disability benefits. Instead, the employer/carrier chose to hide behind what I consider a wall of willful ignorance. They continued to hide behind this wall of willful ignorance even after the adjuster responsible for the file recommended that claimant be accepted as permanently and totally disabled. Claimant's attorney had proven to the satisfaction of the adjuster that claimant was in fact permanently and totally disabled... . Further, it should have been obvious to any reasonable person examining this claim, as well as claimant's age, education and prior work history, that claimant was permanently and totally disabled.
(R. 823-24).
8. The deputy concluded that both the employer and the servicing agent engaged in:
[A] course of conduct designed to deny, delay and defeat claimant's claim for both wage loss benefits and permanent total disability benefits... . A delay or denial of payment without a showing of active effort and initiative on the part of the employer/carrier to fairly and expeditiously determine its obligations to place needed benefits in the hands of the worker is totally inconsistent with the notion that a claimant is entitled to benefits without the services of an attorney. To hold otherwise would be inconsistent with the law expressed in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (1 DCA 1981), as well as subsequent cases.
(R. 824)
9. The deputy further found that since claimant had been without benefits from September 1983 through the date of the hearing, had been previously paid benefits at an incorrect compensation rate, and would not have received benefits awarded until after the hearing on the claim filed by claimant's attorney, the efforts of claimant's attorney clearly resulted in economic benefit to claimant.
We now turn to the points raised by appellants on their appeal from this order. *97 The employer and servicing agent first contend that the deputy erred by disclosing certain file documents protected by the attorney-client privilege, as codified in section 90.502, Florida Statutes (1981), and by the work product doctrine codified in rule 1.280(b)(2), Florida Rules of Civil Procedure. The claimant contends that we should not apply these rules for the reasons recognized in bad faith proceedings against liability insurers, and argues that we should not put a claimant to the inconvenience and expense of deposing various employees of the carrier in order to establish information that is almost always readily available in the carrier's or adjuster's file. Appellants counter that we should not compel disclosure of protected documents since the information relevant to bad faith may be secured through deposition of employees of the employer/servicing agent. We are persuaded that the privileges preserved by the above statutes are too important to be dispensed with upon an argument of mere convenience. Thus we agree with appellants that the required production of certain documents violated both privileges in this instance, but find the error harmless under the circumstances.
An exception to the privileges protected by the above cited rules of evidence has been carved out in bad faith proceedings in excess liability insurance cases. In Boston Old Colony Insurance Co. v. Gutierrez, 325 So.2d 416 (Fla. 3d DCA 1976), the court held that an initial party plaintiff in a bad faith action against an insured and his insurance company is a third-party beneficiary of the insurance contract. Since he stands in the shoes of the insured, the initial party plaintiff may compel disclosure of the insurer's entire case file. Claimant in the present case asks this court to extend this theory to bad faith proceedings pursuant to section 440.34(3)(b), Florida Statutes. We are precluded from doing so by our decision in Agri-Business, Inc. v. Bridges, 397 So.2d 394 (Fla. 1st DCA 1981), pet. for rev. denied, 407 So.2d 1102 (Fla. 1981). Although Agri-Business was a work-product case, the court rejected the third-party beneficiary theory, which would also be the rationale underlying the inapplicability of the attorney-client privilege. Absent facts showing any basis for applying an exception to the general rules,[1] we hold that the attorney-client privilege and work-product doctrine are both applicable in a section 440.34(3)(b) proceeding.
We find, however, that the deputy's decision to disclose the contested documents was harmless error. Although requested to do so by this court during oral argument, appellants' counsel never specifically identified all the documents he believed were covered by the trial-preparation rule. Instead, most of the documents were broadly referred to by subject matter. We limit our consideration to the documents specifically identified.
Three documents, B-23 (R. 766), B-24 (R. 758-59), and B-25 (R. 761), were specifically identified by appellants. These documents are letters sent by the attorney for the employer and servicing agent to the college's representative at Gallagher-Bassett. In chronological order, B-25, dated December 2, 1983, advised the claims representative to continue to controvert the claim for wage-loss benefits and to call the college about the availability of a job for claimant; B-24, dated December 22, 1983, recommended that Gallagher-Bassett accept claimant as permanently and totally disabled; and B-23, dated December 30, 1983, asked the claims representative to obtain information relevant to claimant's average weekly wage. Giving appellants the benefit of any doubt, we conclude that these communications are protected by the attorney-client privilege. § 90.502, Fla. Stat. (1983). We fail to find, however, that disclosure of the information contained in documents B-23 and B-25 prejudiced the substantial rights of the employer and servicing agent. As to B-24, the claims adjuster, following disclosure of this letter, testified by deposition regarding discussions *98 on whether to accept claimant as permanently and totally disabled, and the deputy commissioner's order specifically makes the following finding:
11. The evidence in the records clearly shows that by December 1983, the adjuster handling this claim recommended that the claimant be accepted as permanently and totally disabled. Despite her recommendation, the employer/carrier forced the claimant to go to trial and prove the obvious. The claim was vigorously defended by the attorney for the employer/carrier despite the adjuster's recommendation of permanent total disability.
The fact that the employer and servicing agent refused to follow an informed recommendation to pay permanent total benefits by one charged with making such recommendation is competent evidence of bad faith.
Summarily addressing appellant's next point, and disregarding the evidence referred to in the privileged letters, we conclude that there is competent, substantial evidence in the record sufficient to uphold the deputy's determination that the employer and servicing agent acted in bad faith as early as June 1983 (when claimant reached maximum medical improvement). The record establishes that the employer and servicing agent disregarded claimant's right to a prompt determination of his average weekly wage;[2] that the college attempted to create a special position for claimant only after initially intending to terminate his employment because claimant threatened to sue the college to enforce his compensation rights, and that the employer and servicing agent continued to controvert wage-loss claims, filed every month by claimant between September 1983 and the date of the hearing, without any investigation. We therefore affirm the deputy commissioner's finding of bad faith. AT & T Technologies, Inc. v. Jackson, 478 So.2d 488 (Fla. 1st DCA 1985).
The employer and servicing agent next argue that they were prejudiced by the in camera inspection procedure utilized by the deputy commissioner. We note that appellants' counsel failed to request at the in camera hearing that the controverted documents be sealed and a stay granted in order that immediate appellate review by certiorari could be sought. Instead, counsel made only ambiguous statements concerning a potential appeal. Had appellant's counsel properly objected, the deputy commissioner could have prevented any premature disclosure of these documents to claimant's counsel pending appellate review. Since appellant's counsel failed to properly preserve this issue for review, we decline to reach the propriety of the procedure followed by the deputy in this instance.
The last points raised by the employer and servicing agent concern the amount of the attorney's fee awarded. Claimant's counsel submitted an affidavit at the hearing stating that he expended sixty-five to seventy-five hours on various facets of his representation, but he failed to present detailed time records, as strongly recommended by this court in M. Serra Corp. v. Garcia, 426 So.2d 1118 (Fla. 1st DCA 1983). During the course of the hearing, appellant's counsel thoroughly questioned claimant's attorney regarding his qualifications, the procedures he followed, and the circumstances of his client's claim. No objection was made to the method used by claimant's counsel to justify his fee (T. 268-289). Furthermore, an expert witness testified that the number of hours reported was "very reasonable" for the services rendered (T. 254). In view of the fact that there is some evidence as to the number of hours expended, that the estimate was reasonable, and that the record is not totally devoid of evidence to support the fee, we decline to hold that the lack of detailed documentation is fatal to the award of fees in this case. Brevard County School Board v. Walters, 396 So.2d 1197 (Fla. 1st DCA 1981). We again emphasize, however, that counsel should be diligent in keeping records of services rendered and *99 time expended in prosecuting the claimant's case to aid the deputy commissioner in adequately considering the statutory factors.
Finally, we do not find the $20,000 fee excessive under the statutory formula contained in section 440.34(1)(a)-(h), Florida Statutes (1981). Expert testimony indicated that $22,000 was a reasonable fee. Given the fact that claimant was awarded permanent total disability benefits which, reduced to present value, total $85,352.48, and that, in addition, claimant will receive supplemental benefits of $42,185.24 (although no evidence of the present value of supplemental benefits was presented), we conclude that the $20,000 fee was not so excessive as to warrant reversal. Mt. Sinai Medical Center v. Samuels, 453 So.2d 82 (Fla. 1st DCA 1984).
AFFIRMED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] We further find that claimant failed to make an adequate showing to overcome the work-product protection. Agri-Business, Inc. v. Bridges, 397 So.2d 394 (Fla. 1st DCA 1981).
[2] King Motor Co. v. Parisi, 445 So.2d 1074 (Fla. 1st DCA 1984).