559 So.2d 635 (1990)
ATE FIXTURE FAB and St. Paul Fire & Marine Insurance Company, Appellants,
v.
Paul R. WAGNER, Appellee.
No. 88-2477.
District Court of Appeal of Florida, First District.
March 1, 1990.
On Rehearing May 1, 1990.
*636 C. Anthony Schoder, Jr. of Smith, Schoder & Rouse, P.A., Daytona Beach, for appellants.
Donna L. Bergh of Ronnie H. Walker, P.A., Orlando, for appellee.
SMITH, Judge.
The employer/carrier appeal an order of the Judge of Compensation Claims (JCC) awarding claimant permanent total disability benefits for acceleration or aggravation of his obstructive lung disease due to inhalation of secondary tobacco smoke present in his work environment. We reverse and remand.
Claimant suffered from preexisting lung disease when he became a draftsman for the employer in January 1986.[1] He was required to work in a 12 by 12, poorly ventilated room with two other men, who constantly smoked cigarettes and cigarillos. Claimant testified that he had not had difficulty breathing before beginning work *637 with the employer, but that about a month after he began, he started feeling badly and developed weakness in his chest, and burning in his throat and lungs. He complained and was moved to a larger office, but people in that office smoked as well.
Claimant visited his treating physician, Dr. Gilliard, in June 1986, complaining of a burning throat. Dr. Gilliard diagnosed tracheitis, which he felt was probably caused by secondary tobacco smoke. According to Dr. Gilliard, one makes a determination if an irritant is causing permanent loss of pulmonary function by obtaining pulmonary function tests (PFT's) from the patient. Dr. Gilliard ordered these tests in July 1986. Claimant had undergone these tests in 1983, before beginning work with the employer. The two PFT's taken in 1983 and 1986 were compared and were essentially unchanged except that the residual volume test taken in July 1986, increased from 86% to 109%. Dr. Gilliard opined that this was a little more than would be expected from someone with progressive emphysema, but that it was still within normal limits, though he felt that the change may have been a suggestion that claimant was evolving toward air-trapping.[2]
Claimant returned to Dr. Gilliard in October 1986, complaining of coughing, fatigue, and burning behind the breast bone. Dr. Gilliard diagnosed bronchitis, which he did not feel was caused by secondary tobacco smoke.
Claimant's symptoms persisted and he quit work in January 1987, because his chest and lungs burned so badly. Claimant explained that just prior to quitting he had been on vacation and that he had felt much better though his symptoms never went totally away. But when he returned to work after vacation, his lungs and throat started to burn more and more until he felt compelled to quit.
Claimant did not return to see Dr. Gilliard until September 1987. Dr. Gilliard had more PFT's done, and again, they were essentially unchanged except that the residual volume was now 128%, which meant that claimant was air-trapping. According to Dr. Gilliard, air-trapping is bad because while a certain amount of air is necessary to hold the lungs open, beyond a certain point, the air becomes stagnant air. When Dr. Gilliard's deposition was taken on April 18, 1988, he opined that within a reasonable medical probability, claimant was exposed to secondary tobacco smoke in 1986. That exposure, the doctor believed, accelerated or aggravated his preexisting emphysema, causing a greater permanent impairment than would have occurred from the natural progression of the preexisting emphysema alone, resulting in claimant's becoming permanently and totally disabled in January 1987.
The employer/carrier had claimant seen by Dr. Harman, a professor of pulmonary medicine at the University of Florida Medical School. Dr. Harman ran PFT's on claimant on April 29, 1988, subsequent to Dr. Gilliard's deposition. She found that claimant's test results were essentially the same as they had been in 1983, including the residual volume test which had returned to 98%, and was within normal limits for a man of claimant's age. Because the 1988 findings reflected the same level of dysfunction as claimant had in February 1983, before he worked for the employer, Dr. Harman opined that claimant did not have a permanent, total disability but had a partial disability which predated his employment with the employer.
The JCC accepted the opinion of Dr. Gilliard over Dr. Harman, commenting that Dr. Harman had only seen claimant once, whereas Dr. Gilliard had seen claimant on numerous occasions and was his primary treating pulmonary specialist. The JCC awarded claimant permanent total disability benefits from January 9, 1987.
A JCC has the authority to accept the testimony of one physician over that of others, and generally, he need not explain why he accepts the testimony of one doctor and rejects that of another. Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla. 1978). Nevertheless, the JCC should *638 give his reasons for such rejection where the reason for his finding is not apparent from the record, or it appears that the JCC has overlooked or ignored evidence in the record. Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985); and Poorman v. Muncey & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983).
Although the JCC gave an explanation for accepting Dr. Gilliard's testimony over that of Dr. Harman, it appears that the JCC overlooked or ignored the evidence that subsequent to Dr. Gilliard's deposition, the PFT's were repeated, and that the residual volume test upon which Dr. Gilliard relied (in whole or in substantial part) in arriving at his conclusion that claimant was permanently totally disabled, had returned to 98%, within normal limits for a man of claimant's age. This objective evidence that there was no increased impairment from secondary tobacco smoke was not addressed by the JCC, nor was Dr. Gilliard redeposed in order that he might be required to render an opinion taking into account the more recent test results.
As for appellant's contention that the JCC erred in finding that there can be a causal connection between secondary smoke inhalation encountered at work, and the aggravation of an employee's preexisting injury, we note that while neither of the medical experts cited definitive studies conclusively demonstrating causal connection or lack of it from this kind of exposure, we find that the record contains sufficient evidence upon which the JCC could base his conclusion that a causal connection could exist.
Finally, we do find merit in appellant's contention that the JCC erred in finding claimant totally and permanently disabled. Dr. Gilliard did not place claimant under work restrictions, and, in fact, claimant admits that he engages in a variety of physical activity. The only evidence we find of inability to work is the claimant's statement that he cannot work except in a totally clean environment. This testimony, without more, does not equate with total disability.
Accordingly, we reverse and remand to the JCC for further proceedings consistent with this opinion.
REVERSED and REMANDED.
SHIVERS, C.J., and WIGGINTON, J., concur.

OPINION ON REHEARING
SMITH, Judge.
Claimant has requested clarification, contending that our opinion has remanded the cause to the Judge of Compensation Claims for the purpose of taking additional testimony concerning permanent aggravation of a preexisting condition and yet at the same time appears to make the finding that the record contains sufficient evidence of causal relationship. Claimant argues that since this court sustained the finding of causal relationship that it has sustained a finding of compensability and he was entitled to appellate attorney's fees which were denied by separate order of this court. We agree with claimant that our prior opinion may be confusing and in need of clarification.
Initially, we note that claimant has misinterpreted the paragraph (page 638) in which we addressed the E/C's contention that the JCC erred in finding that there "can be a causal connection" between secondary smoke inhalation and the aggravation of "an employee's" preexisting injury. We concluded by stating: "... [W]e find that the record contains sufficient evidence upon which the JCC could base his conclusion that a causal connection could exist" (emphasis added). In so stating we were only affirming the sufficiency of the evidence to demonstrate that an aggravation of preexisting emphysema can be caused by work-related exposure to secondary tobacco smoke, and not that the evidence demonstrated that it did in claimant's case.
The claimant has the burden of establishing that his injury is causally related to his employment based upon competent, substantial evidence. Speculation or conjecture is not sufficient to establish *639 causal connection. Gadsden County Board of Public Instruction v. Dickson, 191 So.2d 562 (Fla. 1966). In this case, the JCC found that causal connection existed based upon Dr. Gilliard's testimony which predated objective tests tending to demonstrate that claimant suffered no increased impairment from secondary tobacco smoke. In our opinion filed March 1, 1990, we pointed out the errors in the JCC's reliance upon Dr. Gilliard's testimony, and we reversed and remanded for further proceedings. Implicit in our prior opinion, although not specifically articulated, was our assumption that Dr. Gilliard might be redeposed and questioned concerning these later test results. Should Dr. Gilliard, on the basis of these later tests, change his opinion that claimant suffered a permanent aggravation of his preexisting emphysema due to his work-related exposure to secondary tobacco smoke, then there would appear to be no basis upon which to sustain compensability of this claim, without additional evidence. However, if Dr. Gilliard adheres to his previously stated opinion after considering the 1988 test results, and providing his opinion on causation is otherwise competent and based upon reasonable medical probability, and accepted by the JCC, it is our view that the record would then contain sufficient evidence upon which the JCC could base a conclusion that causal connection exists in this case.
Except as herein clarified, our opinion filed March 1, 1990, remains unchanged. Claimant is not entitled to an award of appellate attorney's fees.
SHIVERS, C.J., and WIGGINTON, J., concur.
NOTES
[1] Claimant was in the United States Navy from 1950 to 1965. He was forced to retire from the service due to a 40% disability, the combined result of a hearing loss and sarcoidosis, a restrictive lung disease. In addition to sarcoidosis, claimant also suffered from preexisting emphysema.
[2] Air-trapping has been explained to be residual air left in the lungs after exhaling.