651 So.2d 195 (1995)
ABOVE ALL DRYWALL and FACCA, Appellants,
v.
James SHEARER, Appellee.
No. 93-0124.
District Court of Appeal of Florida, First District.
February 24, 1995.
Rehearing Denied March 27, 1995.
H. George Kagan and Helene H. Morris, of Miller, Kagan and Chait, West Palm Beach, and John E. McLain, III and Mark S. Spangler of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for appellants.
Frederick Daniels, Orlando, and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for appellee.
BARFIELD, Judge.
Above All Drywall and Florida Air Conditioning Contractors Association (E/SA) have appealed an order of the judge of compensation claims (JCC) in which the JCC found the claimant's Amyotrophic Lateral Sclerosis (ALS or Lou Gehrig's disease) condition to be compensable. We reverse and remand for further proceedings.
The claimant had worked for the employer for several years as a drywall finisher. On June 14, 1990, he felt a sharp pain in his back as he bent over to pick up a scaffold board. The claimant saw a chiropractor on two occasions. When his discomfort did not improve, the claimant began treatment in September of 1990 with Dr. Bloome, an osteopath. At this time, his symptoms had progressed to include atrophy of the right arm and a peculiar *196 rash. After testing and consultations with Dr. Farber, a neurologist, the claimant was diagnosed in December of 1990 as suffering from ALS.
When the claimant initially reported a minor back injury on September 21, 1990, the E/SA accepted the injury as compensable. The E/SA discontinued benefits after the diagnosis of ALS and the claimant filed claims for certain benefits, which included temporary partial disability from June 17, 1990 to the date of the hearing, wage loss benefits post maximum medical improvement, continued treatment by Dr. Bloome, and attendant care.
The JCC accepted the testimony of Dr. Bloome, the treating osteopath, and Dr. Sabow, a neurologist with a general practice in South Dakota, whose depositions were introduced. Dr. Bloome and Dr. Sabow each stated that with all probability, the low back injury that claimant suffered at work while lifting the scaffold was most likely the cause of the onset of the ALS. Both Dr. Sabow and Dr. Bloome stated that their opinions were based on their experience of seeing trauma which is followed by what turns out to be ALS and on epidemiological studies which show a significant percentage of injuries preceding ALS.
The JCC noted that Dr. Sabow's explanation of the trauma/ALS relationship is well reasoned, and did not contradict the testimony of Drs. Tandan, Robert, or Farber, all of whom are also neurologists. Each of these neurologists, however, testified that no one knows what causes ALS. Although each of these neurologists noted that one theory of causation is trauma, they also testified that studies regarding this theory involve severe trauma, such as having a hand caught in machinery or being struck by lightning, not the type of trauma incurred by the claimant. Dr. Robert testified that ALS is "a disease that we do not understand regarding what is the mechanism, but certainly we do not associate this condition with any type of trauma or injuries." He was not aware of any scientific evidence which links trauma to ALS. Each of these neurologists also noted that epidemiological studies indicate an association rather than causation;[1] because ALS is a degenerative disease which causes weakness, it is not uncommon for a person to experience some type of trauma due to weakness before a diagnosis of ALS is made.
The E/SA presented the testimony of Dr. Munsat, a neurologist who has studied ALS, including causation of the disease, for approximately thirty years and who sees approximately 250 ALS patients each year. Dr. Munsat testified that there is only one known cause of ALS, which is genetic. He stated that in ninety percent of the cases, there is no known cause. Dr. Munsat noted that there were two active theories as to the cause of ALS. One theory is that it is caused by an immunologic event and the second is that it is caused by a toxin in the blood called glutamate. He stated that beyond those two active hypotheses, there are a number of other speculations regarding causation, including trauma, but that there was little, if any, scientific support for these theories. Dr. Munsat expressed the opinion that there is no scientific evidence that trauma is a causative factor in ALS.
The opinions relied upon by the JCC to support the finding of causation, expressed by the treating osteopath and the neurologist with a general practice in South Dakota, appear incredible in light of substantial evidence that except for those cases in which the disease is genetic there is no known cause of ALS. The E/SA essentially argue that the opinions relied upon by the JCC are not supported by or based on credible evidence. The E/SA, however, made no objections to, or motions to strike, the testimony for lack of competency. The competency issue, therefore, has not been properly preserved for appellate review. Roose & Griffin Landscape Contractors v. Weiss, 558 So.2d 102 (Fla. 1st DCA 1990). The E/SA ask this court to reject the opinions relied upon by the JCC notwithstanding the failure to object because those opinions amount to no more than junk science, i.e., they are so insubstantial as to provide no evidentiary support for *197 the JCC's finding of causation. See De Groot v. Sheffield, 95 So.2d 912 (Fla. 1957). It is not yet necessary for this court to weigh into this determination because we are sending the case back to the JCC who will have another opportunity to weigh the evidence.
We conclude that it is necessary to remand this matter for further proceedings. The JCC rejected the testimony of Dr. Munsat for several reasons, none of which are legally sound. The JCC first noted that Dr. Munsat was called by the E/SA and it was therefore not surprising that his testimony was that there was no causal relationship between trauma and ALS. Dr. Bloome, however, was called by the claimant and Dr. Sabow's deposition was taken and submitted by the claimant. The JCC also noted that the circumstances of Dr. Munsat's payment (four hundred dollars per hour fee, portal to portal from Boston, including his time asleep, which equates to approximately $12,000) led him to place less reliance on his testimony than his credentials would otherwise dictate. The JCC made no mention, however, of the fact that Dr. Bloome was owed approximately $48,000. Dr. Bloome had also made attempts to get financial assistance for the claimant from various entities. There is no apparent source from which this bill can be paid if the claim is not approved.
Another reason asserted by the JCC for rejecting Dr. Munsat's opinion was that his opinion conflicted with that of Dr. Tandan. During Dr. Munsat's testimony, the JCC inquired if he disagreed with Dr. Tandan regarding severe trauma such as electrical shock being a causative factor. Dr. Munsat replied that he thought that he and Dr. Tandan had no basic disagreement and that there was a big difference between trauma as described in the literature compared to the injury in the present case. Dr. Munsat knew of no support for the theory that persons could injure themselves by picking up an object and that such an injury would cause ALS, and he stated that the relationship between trauma and ALS was nothing more than a hypothesis, not yet proved as scientific fact.
Dr. Munsat's testimony did not conflict with the testimony of Dr Tandan in any material respect. Dr. Tandan testified that there is no scientific evidence which conclusively shows that trauma causes ALS. Dr. Tandan also stated that it is impossible to be certain whether trauma plays a part in the genesis of the disease; the only way one could be certain an event is responsible for a motor neuron disease like syndrome is if there is local trauma of a severe magnitude such as being struck by a bolt of lightning in the arm and then developing symptoms within a month. Both Dr. Munsat and Dr. Tandan were of the opinion that the type of injury the claimant suffered would not cause or contribute to the onset of ALS.
It is not clear from the record, and the JCC does not adequately explain, why the opinions of an osteopath and a neurologist with a general practice would be accepted over the opinions of other experts, including those who study the causation and treatment of ALS.
It is clear from the record that the claimant, who has since died, presented a compelling portrait for sympathy, and the medical expense for treating ALS is staggering. Visiting this expense on the employer must be supported by evidence which is both competent and substantial.
The order on appeal is reversed and the matter is remanded for further proceedings.
WOLF, J., concurs.
ERVIN, J., dissents, with written opinion.
ERVIN, Judge, dissenting.
I respectively dissent and would affirm the order because I do not find, on this record, any need for remand to the judge of compensation claims (JCC) for further findings. The right of an appellate court to reverse and remand a compensation order so that it may be clarified is derived from section 440.25(3)(e), Florida Statutes (1989), providing in part:
The order making an award or rejecting the claim, referred to in this chapter as a "compensation order," shall set forth the findings of ultimate facts and the mandate; and the order need not include any *198 other reason or justification for such mandate.

(Emphasis added.) In Brown v. Griffin, 229 So.2d 225 (Fla. 1969), the Florida Supreme Court construed the above provision,[1] which had been amended in 1967. Among other things, the court noted that the legislature had added the word "ultimate" before the word "facts" and eliminated the prior provision requiring a compensation order to set forth "other matters pertinent to the questions at issue." Id. at 226. It continued that in enacting the amended statute, the legislature intended to reduce the unnecessary length of compensation orders "to a concise but complete statement of the findings of fact ... on all factual issues in the case," but still required "sufficient detail to permit application of the substantial competent evidence rule but without undue elaboration." Id. at 228.
In Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla. 1973), cert. denied, 292 So.2d 19 (Fla. 1974), after the Industrial Relations Commission was reorganized, the court modified Brown to require even less detail, stating: "We now hold the Judge of Industrial Claims need make only such findings of ultimate material fact upon which he relies, as are sufficient justification to show the basis of an award or a denial of a claim." Id. at 284.[2]
Based upon my examination of the JCC's findings, I conclude that the JCC did all that he was required to do by the statute: he set forth findings of ultimate facts which were supported by competent, substantial evidence (CSE). The CSE rule means that a compensation order will be upheld if there is any CSE to support the judge's decision. See Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988). Obviously, there was some evidence undergirding the order on review, based upon the conflicting opinion testimony of Drs. Bloome and Sabow. The rule is clear, of course, that a JCC has the authority to accept the opinion of one physician over that of others, and generally a judge need not explain why he or she has accepted the testimony of one doctor and rejected that of another. Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla. 1978); Ate Fixture Fab v. Wagner, 559 So.2d 635 (Fla. 1st DCA 1990). A recognized exception to the above rule is that the JCC should give reasons for such rejection if the reason is either not apparent from the record or it appears that the JCC has ignored or overlooked critical evidence in the record. Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985); Poorman v. Muncey & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983). In my judgment, neither situation applies to the order now on review.
The majority's opinion directing remand focuses largely on the JCC's findings rejecting Dr. Munsat's medical opinion that there was no causal relationship between claimant's industrial injury and his ALS. If I were to confine my examination only to the majority's description of the explanation given in the order, i.e., the E/SA had paid Dr. Munsat a substantial amount of money to testify in its behalf, I could agree that such findings are insufficient, for the reasons outlined in the majority's opinion. The JCC, however, also found that Dr. Munsat was evasive and that his testimony conflicted with that of Dr. Tandan, an expert also called by the E/SA. As Dr. Munsat testified in person, the JCC's vantage point in making such a finding is clearly superior to our own in that he, as trier-of-fact, was in a position to assess the demeanor and candor of the witness.
The record moreover supports the JCC's characterization of Dr. Munsat's testimony as evasive. The JCC first made such comment during Dr. Munsat's cross-examination, when the doctor discussed studies that had failed to establish a causal link between trauma and ALS, yet refused to concede that any study established that trauma is not a causative factor. In making his observation regarding Dr. Munsat's candor, the JCC had before *199 him the deposition testimony of another witness, Dr. Rup Tandan, who, like Dr. Munsat, is a neurologist. Unlike Dr. Munsat, Dr. Tandan stated that research exists which supports the view that there is a causal relationship between severe trauma and ALS. Clearly, then, Dr. Tandan's testimony in that regard conflicted with Dr. Munsat's. Indeed, Dr. Tandan stated that a muscular soft tissue strain of the back  the condition for which claimant was diagnosed  could constitute a severe strain or trauma, depending on how much pain or discomfort the patient suffers, but it was his understanding that the back injury which claimant had sustained did not involve severe trauma. Dr. Tandan's perception of claimant's injury, however, had no supporting factual foundation; therefore, the JCC could properly reject that portion of his testimony. The rule is firmly established that an expert witness's opinion must be based on facts or inferences supported by the record, otherwise the opinion will be rejected as speculative. See Urling v. Helms Exterminators, Inc., 468 So.2d 451, 456 (Fla. 1st DCA 1985).
Dr. Tandan based his opinion regarding the nature of claimant's injury on a letter written by Dr. Haselden  the chiropractic physician who had treated Shearer during the first three months following his injury  describing claimant's condition as "lumbosacral discomfort," which responded well to treatment. Dr. Haselden's characterization apparently caused Dr. Tandan to conclude that Shearer experienced only mild to moderate trauma. The letter, however, described claimant's back condition before claimant suffered his industrial injury of June 14, 1990. Moreover, the letter was the only evidence of claimant's back affliction which Dr. Tandan could have conceivably relied on, as all of Dr. Haselden's remaining records pertaining to claimant were destroyed by a fire in October 1991. Consequently, the description of lumbosacral discomfort, on which Dr. Tandan relied, did not relate to claimant's compensable injury.
Moreover, Dr. Tandan's understanding of the pain claimant endured following his industrial injury is not supported by other evidence in the record. For example, in a "Statement of Injured" for Executive Risk Consultants, claimant wrote that while lifting a scaffold board "something happened in my back that caused a lot of pain that felt like my spine was pushed together." Dr. Bloome, an osteopath, who began treating claimant in September of 1990, recounted that claimant had informed him that when he sprained his back he "felt he had a shock go up his spine."
The JCC gave additional reasons why he accepted the opinion testimony of Drs. Bloome and Sabow over the contrary opinions of the other physicians. For instance, Dr. Bloome, who testified to the causal link, actively treated claimant and stated that everything he had read pointed to injury as being a predominant cause of ALS, and there appeared to be no other causative factor other than the injury. Dr. Sabow, who linked claimant's ALS with his lifting incident, treats patients both before and after they have developed ALS, whereas Dr. Munsat sees them only after they have contracted it. Dr. Sabow testified that he arrived at his opinion from his own experience, and that he has been practicing 20 years in the field of neurology. He explained that he and Dr. Munsat come from two different perspectives in the practice of medicine. He is in the field treating the acute cases, and is frequently the first neurologist seen by patients with this condition, whereas Dr. Munsat practices and conducts research within a university setting on patients already diagnosed.
The majority correctly notes that the E/SA did not preserve for appellate review the issue of the competency of claimant's experts to offer their opinion on causation.[3] Nevertheless, there appears to be an underlying sentiment in the majority's opinion implying that the testimony offered by the claimant's experts lacks the substantial character of that introduced by the E/SA, and therefore provides questionable evidentiary support for *200 the JCC's finding of causation. I note specifically that the majority states, ante at 197: "It is not yet necessary for this court to weigh into this determination because we are sending the case back to the JCC who will have another opportunity to weigh the evidence." I consider that it would be inappropriate for this court, either at this stage or at any time following remand, to weigh the substantiality of the evidence presented in the case below, which is, of course, exclusively the province of the JCC. See Batka v. Duff's Smorgasbord, 560 So.2d 377 (Fla. 1st DCA 1990). The question of the substantial character of the evidence might be different if the issue of claimant's experts' competency had been preserved, but it has not, and, although the E/SA argues in much of its brief regarding their lack of qualifications,[4] these arguments should now be conclusively deemed to be waived. Roose & Griffin Landscape Contractors v. Weiss, 558 So.2d 102 (Fla. 1st DCA 1990).
Because there is clearly CSE to support the JCC's findings, I would simply affirm the order.
NOTES
[1] In fact, Dr. Bloome continually referred to the fact that the epidemiological studies showed a high correlation between trauma and later onset of ALS.
[1] Then section 440.25(3)(c), Florida Statutes.
[2] The supreme court's interpretation of the statute has been restated by this court in a number of different ways. See, e.g., Grace v. Collier County Sch. Bd., 552 So.2d 961, 963 (Fla. 1st DCA 1989); Taylor v. Stanley Indus. Corp., 528 So.2d 1292, 1293 (Fla. 1st DCA 1988); Curry v. Miami Dolphins, Ltd., 522 So.2d 1010, 1011-12 (Fla. 1st DCA 1988).
[3] As all of claimant's medical testimony was submitted by deposition, without objection, we are required to assume that both of claimant's experts are fully qualified to testify about the causative link between trauma and ALS. Cf. Clair v. Glades County Bd. of Comm'rs, 649 So.2d 224 (Fla. 1995).
[4] See, for example, "[c]laimant's superficially credentialed experts"; the E/SA's "internationally known expert with `50 or 60' articles specifically related to ALS"; and extensive references to their own experts' qualifications.