SMITH, Judge.
Appellants, the employer and carrier (E/ C), seek reversal of a workers’ compensation order awarding permanent total disability (PTD) benefits. We affirm.
The claimant was injured in two separate accidents, one in September 1988 when he injured his right shoulder, and the second when he injured his left knee in September 1989. The combination of the two industrial accidents left claimant unable to continue working as a sheet metal mechanic. After maximum medical improvement (MMI) was reached in May 1990, a two-year work search was undertaken, but it proved unsuccessful. The E/C referred claimant to rehabilitation consultants who performed an evaluation and made efforts to locate a job for the claimant, without success. The consultant assigned to claimant’s case did not believe there was any hope of finding work for the claimant in claimant’s home area, Crestview. The claimant also began a course of training in taxidermy, but discontinued this after he found that the work aggravated his shoulder. The claimant thereafter filed a claim for PTD benefits.
Prior to the final hearing counsel for the' parties entered into a pretrial stipulation as ordered by the Judge of Compensation Claims (JCC). In this stipulation, approved by order of the judge, no mention was made by either the claimant or the E/C concerning the need for an evaluation for rehabilitation, or further training and education. The case then proceeded to final hearing, at which the claimant was the only live witness, all other testimony and medical evidence being presented by way of deposition. Following the testimony of the claimant, the judge inquired of counsel as to the position of the respective parties in the case. Claimant’s counsel stated that claimant claimed the evidence warranted a finding of permanent total disability. The E/C’s counsel opposed this view, pointing out the relatively minor degree of physical impairment suffered by the claimant. In response, the judge agreed with the E/C’s counsel, but inquired ‘What am I supposed to do with this ease? I mean the guy’s been looking for work for two years. He says they can’t find him a job in this area. He’s lived in Crestview all his life.” In response, the E/C’s counsel stated: ‘Well, one, you know, I’m — the statute suggests that you may want to refer him for some sort of comprehensive evaluation before an adjudication of permanent and total, you know, and that’s obviously up to you.” In further discussion between the judge and counsel, the judge expressed concern that the claimant had done a two-year work search, and had tried rehabilitation that had done no good. The judge also stated that he would not refer the claimant to rehabilitation because he had already been referred to rehabilitation, and that whether through the fault of the carrier or not, whatever had been done for the claimant “wasn’t very good.” At the conclusion of arguments of counsel, the judge indicated that he would enter an order finding the claimant permanently, totally disabled.
In his final order awarding PTD, the JCC discussed numerous factors supporting the claimant’s claim. The findings and conclusions of the JCC which are most pertinent to *803 the issue raised on appeal are found in two key paragraphs, which read as follows:
11(d) The Claimant’s physicians are of the consensus that he cannot return to the heavy manual labor he has performed in the past. The physical limitations further interfere with his ability to perform many light or sedentary jobs since he cannot use his dominant hand for repeated activities and must change his position frequently. As noted above, he is not very suited by his limited education and work background for many light or sedentary jobs. The injuries, coupled with his background, have severely handicapped Claimant’s ability to compete in the open labor market. Based upon those severe vocational handicaps, coupled with Claimant’s long, extensive and unsuccessful job search, Buena Vista Palace v. Lopez, 557 So.2d 948 (Fla. 1st DCA 1990); Bill’s Equipment and, Rentals v. Teel, 498 So.2d 536 (Fla. 1st DCA 1986); Holiday Inn v. Sallee, 496 So.2d 227 (Fla. 1st DCA 1986), and the rehabilitation counselor’s opinion that there is no possibility of finding Claimant a job within his limitations in the relevant locality, Seligman & Latz, Inc. v. Panell, 530 So.2d 1032 (Fla. 1st DCA 1988), it is clear that Claimant has satisfactorily proven his entitlement to permanent total disability.
12. The Employer/Carrier contends that the undersigned should refer the Claimant for vocational evaluation and rehabilitation before adjudication of permanent total disability. The Employer/Carrier has had in excess of two (2) years since maximum medical improvement to evaluate and attempt rehabilitation of the Claimant. Other than the failed attempt at the taxidermy course which was initiated and accomplished only with the persistence of the Claimant, the Employer/Carrier has made no attempt to evaluate and rehabilitate the Claimant. It is only in the face of a likely permanent total disability adjudication that the Employer/Carrier has raised this issue. There is no evidence that a comprehensive vocational evaluation and rehabilitation would be successful with this Claimant. Further, the Employer/Carrier has failed to undertake this for over two years and instead only attempted job placement. It would be unfair to the Claimant to delay his receipt of permanent total disability benefits in the face of the Employer/Carrier’s inaction in this regard in the past. However, hopefully, this Order will spur the Employer/Carrier to now attempt comprehensive rehabilitation which will lead to successful return to work for this Claimant. W.R. Grace & Co. v. Marshall, 405 So.2d 444 (Fla. 1st DCA 1981).
The E/C present a single issue on appeal. They contend that the JCC erred in entering an order adjudicating the claimant PTD without first determining whether there is a reasonable probability that the claimant could be rehabilitated through training and education to the point of achieving suitable gainful employment. In so ruling, the E/C contend, the JCC disregarded the mandate of section 440.49(l)(c), Florida Statutes, as amended by Chapter 89-289, Laws of Florida (1989), effective October 1, 1989.
As amended, section 440.49(l)(c) provides: Prior to entering an order adjudicating an injured employee to be permanently and totally disabled, the judge of compensation claims shall first determine whether there is a reasonable probability that, with appropriate training and education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of the individual to undertake such training or education.
The E/C contend that the above-quoted subsection effectively overruled this court’s decision in W.R. Grace v. Marshall, 405 So.2d 444 (Fla. 1st DCA 1981) in which this court, construed the same subsection as it existed prior to the 1989 amendments as permitting, under the facts presented, a final order awarding PTD and at the same time ordering that the claimant be evaluated for vocational rehabilitation.
For comparison, we think it is pertinent to consider the language of section 440.49(l)(c) in effect when W.R. Grace was decided. Section 440.49(l)(c), enacted in 1979 as Chapter 79-40, § 37, Laws of Florida, provided:
Prior to adjudicating an injured employee to be permanently and totally disabled, the *804 Deputy Commissioner shall determine whether there is a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
The W.R. Grace decision held that the deputy commissioner (now JCC) complied with the statute by determining in the same order that the claimant probably could and in furtherance of his best interest should be rehabilitated with appropriate training, and that the claimant was permanently and totally disabled as well due to loss of wage earning capacity. The court pointed out that to require a rehabilitation evaluation and reference to an appropriate training facility as a condition to recognizing a claimant’s present permanent disability, “would leave claimant either without compensation for his present disability or in receipt of an adulterated-type of temporary disability benefits extending beyond the date of his maximum medical improvement.” 405 So.2d at 445. Such a result, the court found, would neither be in the best interests of all affected parties, nor would it be consistent with the harmonious administration of Chapter 440.
The E/C insist that the 1989 amendments to the statutes were designed specifically to overrule the holding in W.R. Grace. According to the E/C’s argument, under the amended version of 440.49(l)(c), the entry of an order adjudicating a claimant to be permanently and totally disabled is prohibited unless, as a condition precedent, the JCC has determined whether or not there is a reasonable prospect of rehabilitation.
We find the E/C’s argument as to the presumed effect of the statutory changes to be deceptively simple. We agree, as argued by the appellee, that the changes in the wording of section 440.49(l)(c) did little, if anything, to alter the clear meaning and import of the prior statute.
To what extent, if any, the amended statute overruled this court’s decision in W.R. Grace is debatable. In W.R. Grace, the JCC awarded PTD and ordered rehabilitative services, in the same order. This court, affirming, held that the order sufficiently complied with the statute since the JCC did make a finding that a period of rehabilitation would be beneficial to the claimant. The E/C argues that under the amended version of section 440.49(l)(c), if the JCC finds that a period of rehabilitation would be beneficial to the claimant and orders rehabilitation, then the award of PTD must be postponed until the completion of the course of rehabilitation. Whether or not the E/C’s position is correct, we find that this interpretation is not controlling in the case before us. This case is simply unlike W.R. Grace. In both cases the JCC awarded PTD. However, in W.R. Grace, the JCC ordered the E/C to provide rehabilitative services, but no such order was rendered in this case. Furthermore, in W.R. Grace, since the award of rehabilitative services was unchallenged, it must be assumed that there was record support for a finding that rehabilitation probably would be successful, and that the evidence would also support a finding that the provision of rehabilitative services was in the claimant’s best interests. In the case before us, by contrast, the JCC specifically found that there was no evidence that the provision of comprehensive vocational evaluation and rehabilitation would be successful in returning the claimant to the work force.
This court, in at least two cases decided subsequent to W.R. Grace, has squarely held that the absence of findings by the JCC under section 440.49(l)(c), Florida Statutes (1979), does not operate to postpone the award of PTD where no evidence is presented that rehabilitative services could produce results sufficient to defer permanent total disability determination. H.S. Camp & Sons v. Flynn, 450 So.2d 577 (Fla. 1st DCA 1984); Wilhoit International v. Tidwell, 497 So.2d 958 (Fla. 1st DCA 1986). See also, All American Pools v. Zinnkann, 429 So.2d 733 (Fla. 1st DCA 1983) (based on W.R. Grace v. Marshall, it is clear that under section 440.-49(l)(c) a claimant is not required to complete or even begin the rehabilitation process before he is entitled to an award of PTD benefits).
*805 In the case before us, in recognition of the absence of a factual basis for the JCC to order rehabilitative training or education under section 440.49, the E/C argue that the proper course in this case would be to remand the case back to the JCC for a second hearing devoted exclusively to the presentation of evidence concerning the prospects of rehabilitation for the claimant. We do not agree that a two-stage hearing process is mandated by section 440.49(l)(c). Had such a procedure been intended by the Legislature, it could have clearly said so. Moreover, we think the JCC’s order manifests the patent injustice that would result from the adoption of the E/C’s position in this case. In his final order, quoted in part above, the JCC found: “There is no evidence that a comprehensive vocational evaluation and rehabilitation would be successful with this claimant. Further, the Employer/Camer has failed to undertake this for over two years and instead only attempted job placement. It would be unfair to the Claimant to delay his receipt of permanent total disability benefits in the face of the Employer/Carrier’s inaction in this regard in the past.”[1]
Despite the E/C’s insistence that the 1989 changes to section 440.49(l)(c) established a new condition precedent to the award of PTD, we must respectfully disagree. According to the controlling language of section 440.15, unchanged by the 1989 amendments, PTD “shall be determined in accordance with the facts ...” and “no compensation shall be payable ... if the employee is engaged in, or is physically capable of engaging in, gainful employment; and the burden shall be upon the employee to establish that he is not able uninterruptedly to do even light work due to physical limitation.” § 440.15(l)(b), F.S. (1989). Thus, the substantive definition of PTD remains the same after the 1989 amendments, and indeed, remains the same today.[2] It should be noted that this court held, in W.R. Grace, that the provision requiring a finding concerning the probabilities of restoring the claimant to employability through training or education was 'procedural. Nothing in the amended statute affects this holding.[3] Therefore, the present case simply represents an instance in which the claimant established his PTD status in accordance with the controlling substantive law, and the procedural requirement of section 440.49(l)(c), was either waived by the E/C or had no operative effect in the proceeding below because of the absence of any evidence that the claimant could be restored to em-ployability through training or education.
As a practical matter, we would point out that the 1989 amendments appear to have little or no application to this claimant. In Clay Hyder Trucking Lines v. Atherton, 450 So.2d 318 (Fla. 1st DCA 1984), we noted that while subsection (l)(c) of section 440.49 is procedural, as held in W.R. Grace, the same does not hold true for all of section 440.49. Accordingly, the court held, the 1979 revision of section 440.49(l)(a), which placed the responsibility and cost of rehabilitation on the E/C, rather than the Department of Labor and Employment Security (Department), was substantive in nature, and operated only prospectively. The same analysis compels us to hold that in this case, the 1989 amendments to section 440.49 which transferred the responsibility and cost of rehabilitation from the E/C to the Department of Labor and Employment Security are substantive in nature, and applies only prospectively. Since the claimant here received his injuries prior to the effective date of the 1989 amendments (October 1, 1989), the E/C remains responsible for all cost and expense of *806 attempting to rehabilitate this claimant, if indeed the E/C wishes to further pursue such efforts.[4] Thus, much of the E/C’s argument concerning the JCC’s failure to order an evaluation by the Department under section 440.49(l)(a), and under the specific authority conferred upon the JCC by section 440.33(3) to order such evaluation, is misplaced.
Finding no basis for reversal, the order on review is
AFFIRMED.
KAHN and LAWRENCE, JJ„ concur.

. The recitation in the order that the E/C had only attempted "job placement” is somewhat inaccurate since the rehabilitative consultants employed by the E/C also coordinated the claimant’s attempt to learn the art of taxidermy by means of a correspondence course.

. It is notable also that the substantive law, specifically section 440.15(l)(d), Florida Statutes (1993), continues to recognize that an employee receiving permanent total disability may nevertheless become rehabilitated so as to establish an earning capacity, in which event he or she becomes eligible for wage -loss benefits.

.This court has recently had occasion to consider and discuss at some length, in connection with other amendments to the workers’ compensation law, the necessity of amending the substantive controlling statutes in order to effect a change in the law. See Vegas v. Globe Security and Cigna, 627 So.2d 76 (Fla. 1st DCA 1993).

. See, for further emphasis, rules of the Division of Workers’ Compensation, Department of Labor and Employment Security, particularly, Rule 38F-8.063, providing for notice by the carrier to an "eligible injured employee” of the availability of the vocational evaluation training and education benefits available from the Division under section 440.49(1), F.S., and Rule 38F-8.062(3), which defines “eligible injured employee” as "an employee injured on or after October 1, 1989 and who appears to have a permanent diminution of wages as a result of the injury.”