SHIVERS, Senior Judge.
Iran Boles (“Boles”) appeals a workers’ compensation order in which the Judge of Compensation Claims (JCC) determined Boles had not proven permanent total disability (PTD) status. Finding that the JCC did not articulate adequate findings regarding Boles’ job search efforts after May 24, 1994, we remand for further findings on the job search issue.
Claimant Boles is a thirty-five-year-old laborer who injured his back on April 30, 1993 while working as a detailer for the employer, West Orange Paint & Body. He is functionally illiterate, and his appearance is marred by a need for dental work (he lacks some of his front teeth). Boles has a felony conviction predating such employment, and a suspended driver’s license. His manual dexterity in the right hand tests at the fiftieth percentile (34-67% being “average”), and, in the left hand, at far less than that. With the exception of one, three-week attempt at logging in cars to be detailed for the employer, Boles has not been employed since he left work due to injuries caused by his industrial accident.
Boles has seen many physicians in connection with his industrial accident. In July of 1993, Boles had back surgery (a lumbar lami-nectomy and discectomy), which was performed by Dr. Theodore Hoff. By letter dated November 24,1993, Hoff indicated that Boles had a ten per cent impairment to the body as a whole as a result of his back disorder and disc hernia.
Boles was treated postoperatively by Dr. Raymond Gilmer, Jr., the orthopedist to *953 whom he had originally presented with complaints of left hip pain on May 26, 1993. Gilmer gave Boles the following work restrictions as a result of his industrial accident: no lifting in excess of thirty pounds, and no frequent stooping or bending.
Beginning on October 6, 1994, Boles also treated with Dr. Bruce Brunson, a neurological surgeon. Brunson opined that Boles reached MMI from a neurosurgical standpoint effective October 25, 1994. He opined that Boles had a seven per cent whole-body impairment as a result of injuries sustained in his industrial accident. Brunson assigned the following work restrictions to Boles: no lifting greater than twenty-five pounds (if close to the body) or fifteen pounds (if away from the body), no repetitive bending, no sitting for more than one hour without getting up and moving around.
On October 19, 1994, Boles was examined by Dr. Garrett Powell, also a neurosurgeon. By letter dated November 10, 1994, Powell advised counsel for the employer that Boles had reached MMI, and that no further surgical intervention was recommended. Powell gave Boles the following work restrictions: no lifting in excess of fifteen pounds, no work that would allow him to change positions every thirty to sixty minutes, and no repetitive bending, lifting or extension of the lumbar spine.
Lastly, Boles underwent an independent medical examination by Dr. Armand Zilioli, an orthopedist. Based on the Florida guidelines, Zilioli stated that Boles had sustained a ten per cent permanent, partial impairment to the body as a whole. He recommended the following work restrictions: no lifting in excess of twenty-five pounds, no repetitive bending, and no long periods of sitting.
Boles sought permanent, total disability benefits from the date upon which he underwent a vocational evaluation, May 24, 1994. At the merits hearing, the JCC considered Boles’ testimony, the medical testimony or medical records of the doctors indicated above, and the testimony of a vocational consultant, Randy Salmons (for Boles), and a rehabilitation consultant, Terry Beever (for the E/C). Both experts testified that Boles’ employability would be moderately to severely affected adversely by his medical limitations, reading and writing illiteracy, suspended driver’s license, history of felony conviction (in mid-1980’s) and “poor personal appearance.” Salmons indicated that these limitations profoundly limited Boles’ education and training potential. In fact, in evaluating Boles, Salmons identified no employment assets whatsoever. Beever recommended further testing, remedial classes and vocational assistance.
Based upon his consideration of the record evidence, the JCC found that Boles was “not permanently and totally disabled due to his age, medical opinions, and the likelihood that the improvement of his appearance, regaining transportation, remedial training and job placement assistance are likely to return him to gainful employment in the near future. To adjudicate him permanently and totally disabled in light of the foregoing would be a disservice and not in keeping with the intent of the Florida Workers’ Compensation Act.” This appeal followed.
Boles seeks to establish that, from May 24, 1994 forward, he has been permanently and totally disabled because of his industrial accident. Section 440.15(l)(b), Florida Statutes, provides, in pertinent part, as follows:
[In case of total disability adjudged to be permanent,] ... no compensation shall be payable ... if the employee is engaged in, or is physically capable of engaging in, gainful employment; and the burden shall be upon the employee to establish that he is not able uninterruptedly to do even light work available within a 100-mile radius of the injured employee’s residence due to physical limitation.
The claimant alleging permanent, total disability has the burden of proving his PTD status. He can meet that burden in one of two ways: (1) through medical testimony establishing claimant’s physical restrictions, coupled with other evidence regarding the effective elimination of employment opportunities within claimant’s capacity and qualifications[1], or (2) through proof of a *954 lengthy, but unavailing job search.[2]
In this case, the JCC found that the medical evidence did not support a finding that Boles was permanently, totally disabled. That finding is supported by substantial, competent record evidence.[3] While all physicians assigned Boles an impairment rating and work restrictions, none opined that Boles could not engage in light-duty work uninterruptedly.
However, the JCC made no finding that, due to medical limitations resulting from the industrial accident, Boles’ job search efforts for the period following May 24, 1994 were lengthy yet unavailing. Rather, in paragraph 3 of the findings of fact, the JCC states: “Having reviewed the wage loss requests and job searches, it does not appear Claimant’s job search was done in bad faith and no evidence or testimony was presented to show that Claimant’s job search for that period was not a good faith effort.” (Emphasis supplied). In the next sentence, the JCC determined that, “[tjherefore, Claimant is entitled to receive wage loss benefits for the period 10-2-9⅛ through 10-15-9k.” (Emphasis supplied). Thus, although the Appellees concede that the JCC determined “Claimant’s one-year job search [to be] in good faith,” (Appellee’s brief at 23), the JCC’s finding even as to that aspect of Boles’ job search following May 24, 1994 is, at best, ambiguous.
Further, the JCC, m denying PTD benefits, specifically found that “factors unrelated to Claimant’s disability are currently adversely affecting his attempts to return to gainful employment. Claimant requires dental care to improve his appearance, assistance in regaining his driver’s license, remedial educational assistance and job development assistance.” Noting that the E/C had voluntarily offered to assist in these areas, the JCC referred to Beever’s testimony that, with such assistance, Boles “could overcome the barriers to returning to gainful employment.”
However, the fact that there is evidence that Boles, with rehabilitation, may be returned to gainful employment is not dis-positive of the PTD issue. See, e.g., Fairchild Aircraft v. Raybon, 634 So.2d 801 (Fla. 1st DCA 1994). Rather, where, as here, the medical evidence alone (or in conjunction with the testimony of vocational or rehabilitation consultants) does not support a finding of PTD status, the JCC should examine the claimant’s job search efforts to determine whether he has met his burden of proof through evidence of his job search.
The JCC’s findings that: (1) the E/C have agreed to provide assistance to Boles in the areas of, inter alia, rehabilitation and job procurement, (2) the testimony of Beever is accepted over that of Salmons to the extent of any conflict, and (3) the record medical *955 evidence is, in and of itself, insufficient to support a finding of permanent, total disability, are affirmed. However, because the JCC has failed to make sufficient findings regarding Boles’ job search efforts after May 24, 1994, this case is REMANDED for further findings on the issue of the adequacy of Boles’ job search efforts in that regard.[4]
BARFIELD and KAHN, JJ., concur.

. See Pan American Bank v. Glinski, 584 So.2d 52 (Fla. 1st DCA 1991) (claimant determined to *954 be PTD where restricted to working no more than four days a week, sitting no more than thirty minutes continuously, standing no more than 45 minutes continuously, lifting no more than 30 pounds, and no stooping, bending, or walking up or down stairs); Roose & Griffin Landscape Contractors v. Weiss, 558 So.2d 102 (Fla. 1st DCA 1990) (claimant determined to be PTD despite video showing her doing light gardening, where medical testimony reflected that she was not able "to do even sedentary work on a full-time basis”).

. See, e.g., R.D. Brown Contractors v. Padgett, 569 So.2d 499 (Fla. 1st DCA 1990), citing Area Electric Service, Inc. v. Cunningham, 538 So.2d 471 (Fla. 1st DCA 1989); Southern Bell Telephone & Telegraph Co. v. Williams, 512 So.2d 243 (Fla. 1st DCA 1987); Mt. Sinai Medical Center v. Jacobs, 492 So.2d 1143 (Fla. 1st DCA 1986); Fair-Way Restaurant v. Fair, 425 So.2d 115 (Fla. 1st DCA 1982). The adequacy of the job search is a question of fact for the JCC’s determination. See Xerographies and Claims Center v. Bender, 558 So.2d 514 (Fla. 1st DCA 1990); Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988).

. The JCC noted that "all of the physicians herein do feel Claimant is physically capable of working with his restrictions and none have stated that he is unable to do even light work uninterruptedly.” With respect to the vocational expert testimony, the JCC accepted the testimony of Beever (who advocated a plan of vocational training and job search assistance) over that of Salmons (who opined that Boles was completely unemployable), to the extent of any conflict. This implies that the JCC concluded not only that the medical evidence alone was insufficient to establish PTD status, but also that the medical evidence, coupled with the vocational evidence, was insufficient to support a finding of PTD status. This conclusion is similarly supported by competent, substantial record evidence.

. Cf. Pic N’ Save v. Edens, 653 So.2d 1132, 1134 (Fla. 1st DCA 1995) (case remanded where JCC’s recital that, “in light of all the circumstances," claimant had "submitted temporary partial wage loss forms in a reasonably prompt manner,” and had “looked for employment in a good faith manner” did not meet standard established for proof of good-faith job search); Florida Sheet Metal v. Stiffler, 593 So.2d 610, 611 (Fla. 1st DCA 1992) (order reversed and remanded for further findings, where JCC was ambiguous in failing to state the basis upon which he determined that claimant had completed a good-faith work search for period in question); Trujillo v. Southern Wine & Spirits, 525 So.2d 481, 483 (Fla. 1st DCA 1988) (case remanded where order did not contain specificity sufficient to ascertain how deputy commissioner concluded that claimant's job search was inadequate).