ERVIN, Judge,
dissenting.
I cannot agree with my colleagues’ decision to affirm the order denying claimant’s petition for permanent total disability (PTD) benefits. In my judgment, the judge of compensations claims (JCC) ignored or overlooked critical evidence in the record indicating a contrary result, and erroneously made certain critical findings that are unsupported by the record. I would therefore reverse the order and remand the cause to the JCC with directions that he either award the benefits requested, or, in the alternative, that he clarify his findings by both correcting his erroneous findings and addressing evidence in the record which he did not address in the order on review.
Because a proper decision in this case depends upon the essential facts, I consider that a brief exposition of the evidence is necessary. Claimant, nearly 62 at the time of the 1996 hearing, suffered two compensa-ble injuries while employed as a licensed practical nurse: the first, on May 19, 1991, when she slipped and fell from a table on which she had been standing, resulting in the fracture of two bones in her left wrist, and the second, on September 2, 1991, when she fell while walking on the grounds of the hospital, breaking her ankle in two places. In early 1992 she began to suffer great pain in her left hand, and her condition was diagnosed as carpal tunnel syndrome (CTS), which resulted in surgery performed on the wrist during June 1992. She then resumed her employment in late July 1992. After working about a month, the pain returned to her left hand, and she believed she was incapable of performing the duties of her position. She explained that because she did not want to be a burden to her coworkers, she had tendered her resignation. Claimant has not worked at any job since her resignation.
Several doctors provided treatment to claimant. Her primary authorized physician, Dr. Harlan Selesniek, an orthopedist, conducted the carpal tunnel surgery and cared *539 for claimant’s ankle fractures. Dr. Selesnick listed claimant’s physical limitations on a form he filled out on May 31, 1991, stating that the patient could on occasion lift up to ten pounds with her right hand, and that she could not use her left hand to grasp, push, pull or finely manipulate. He also restricted her from climbing. Dr. Selesnick further noted that the claimant had a comminuted wrist fracture. Dr. Selesnick last saw claimant in March 1993, and he determined that she had reached maximum medical improvement (MMI)as of that date with a seven percent permanent impairment (PI) to the body as a whole.
Claimant was also seen by Dr. Paul Wand, a neurologist, who never treated her but instead evaluated her restrictions in December 1993, and again in June 1995 in regard to her application for Social Security disability benefits. Dr. Wand did not order any diagnostic tests, nor did he receive the records from her previous physicians before he made his reports. He did, however, subsequently review the testing that Dr. Selesnick had performed, and indicated in his deposition that the information did not alter his evaluation or restrictions.
Dr. Wand diagnosed CTS in both of claimant’s wrists in December 1993.[1] In his functional-capacities evaluation form, which he had filled out for Social Security purposes in 1995, Dr. Wand opined that claimant should not lift more than five pounds, should not stand or walk for more than one hour at a time because of weakness in the left foot, should not sit for more than two hours at one time, should never climb, balance or crouch, and only occasionally stoop, kneel or crawl, and that reaching, handling, feeling, pushing and pulling were affected by her work-related injuries. Moreover, he placed claimant at MMI as of June 27, 1995, with a 13 to 15 percent PI to the body as a whole. Dr. Wand testified at his 1996 deposition that these restrictions would still apply, and he clearly opined that they were established as a result of the accidents that claimant had suffered at work.
Jerry Adato, a certified vocational evaluator with approximately 14 years of experience evaluating workers’ vocational abilities, evaluated claimant in October 1994. When he performed a computer match of the transferable skills from her former nursing position, taking into account the restrictions assigned by Drs. Selesnick and Wand, he found that claimant was incapable of performing a single position out of the 12,000 listed in the national economy. While Mr. Adato testified that he had not considered claimant’s ability to perform part-time work, he also stated that the same restrictions would apply whether the work was part-time or full-time, because the basic skills that were needed would not change.
Claimant also entered into evidence a copy of the order that awarded her Social Security disability benefits. It found entitlement because physically she would be able to perform only a very narrow range of sedentary jobs. This order was based on the testimony of a different vocational evaluator than Mr. Adato and a different consulting physician for the Social Security Administration than either Drs. Selesnick or Wand.
The employer/carrier did not submit any contrary medical or vocational evidence.
In denying the claim for PTD benefits, the JCC observed that a claimant meets his or her burden establishing entitlement to same in one of two ways: (1) through medical evidence setting forth claimant’s physical restrictions, together with other evidence showing the elimination of employment opportunities, or (2) through proof of a lengthy but unavailing job search.[2] As to the latter crite *540 rion, I agree that the record supports the finding that the claimant failed to conduct an adequate work search. In my judgment, however, the findings the JCC made as to the former requirement, as I have previously indicated, are either lacking in support in the record or need further explication.
For example, in rejecting Mr. Adato’s opinion that claimant was unemployable, the JCC explained that Adato’s opinion was based upon outdated information, specifically, upon Dr. Selesnick’s report of May 31, 1991, placing restrictions on claimant two weeks following her wrist fracture when she was temporarily, totally disabled. The JCC emphasized that Adato did not do a follow-up with any authorized physician at the time he had interviewed claimant in October 1994.
Although it is true that Adato based his evaluation to a large extent on Dr. Seles-niek’s physical restrictions of May 1991, these limitations were nonetheless basically the same as those Dr. Wand gave claimant in June 1995; yet, the order fails to mention the consistency in the two physicians’ reports. Moreover, Adato’s vocational assessment of claimant was not only based on these medical restrictions, but also on his own testing of claimant’s academic skills, her ability to write, and the skills that she had acquired in her previous job. He then used this information to determine whether any job existed that claimant could perform. In my judgment, the only valid reason for rejecting Adato’s evaluation would be if the restrictions Dr. Wand imposed can be considered to have no foundational basis.
In refusing to accept the limitations Dr. Wand imposed on claimant, the JCC gave several reasons, one being that Dr. Wand did not review any prior diagnostic studies or medical records before writing his report, and that he had not contacted any of the prior treating physicians or obtained any of their records before his deposition. How Dr. Wand’s failure to consider other physicians’ reports or studies compromises the credibility of his own appraisal escapes me. No other doctor’s report conflicts with Dr. Wand’s; in fact, as previously observed, both Dr. Selesnick and Dr. Wand’s reports were substantially similar despite the lapse in time between their preparation.
The JCC also stated in his order that Dr. Wand’s testimony “does not provide me with a basis to determine whether these restrictions are causally related to the workers’ compensation accident four years earlier.” (Emphasis added.) Yet Dr. Wand unequivocally testified that the current restrictions he had placed on claimant were caused by her accidents suffered at work, and no medical testimony to the contrary was offered.[3] The JCC did not give an adequate reason for ignoring this testimony in his order, and the rejection of this testimony was error, because it was a substitution of his opinion for that of the medical doctor. See, e.g., Turner v. G. Pierce Wood Mem’l Hosp., 600 So.2d 1153 (Fla. 1st DCA 1992); Romero v. Waterproofing Sys. of Miami, 491 So.2d 600 (Fla. 1st DCA 1986).
Similarly, the JCC found that claimant had admitted having an automobile accident subsequent to her industrial injuries, without any evidence in the record to support it. Finally, although the JCC referred to claimant’s receipt of Social Security disability benefits in his order, he did not discuss this as a *541 factor in his decision to deny PTD benefits, contrary to Gill v. USX Corp., 588 So.2d 1035, 1038 (Fla. 1st DCA 1991), where we said that such should be a consideration “in the JCC’s evaluation of claimant’s ability to return to work.” Thus, it is impossible to say whether the JCC would have reached the same result were it not for his erroneous and omitted findings.
Under the circumstances, the order denying PTD benefits should either be reversed and the cause remanded with directions that such benefits be awarded, or the case should be remanded with directions that the JCC revise his order of denial by addressing the matters stated in this dissent that he did not mention in the order.

. Dr. Wand opined that the CTS in claimant’s right wrist was also causally related to her industrial accident. His explanation was that when one falls backward, as had claimant, such person places one's hands behind him or her in an attempt to break the fall. In claimant's case, she had fractured her left wrist which caused the resulting CTS, and, at the same time, in all probability, she had put stress on her right wrist as well, leading to the development of the CTS.

. In outlining the above criteria, the judge quoted from this court’s opinion in Boles v. West Orange Paint & Body, 667 So.2d 951 (Fla. 1st DCA 1996). In fact, this court’s case law recognizes a third means of proving one's right to PTD: a combination of medical proof of a substantial PI and vocational evidence that claimant is unemployable. Herrera v. Hojo Inn Maingate, 680 So.2d 439 (Fla. 1st DCA 1996); Pan Am. *540 Bank v. Glinski, 584 So.2d 52 (Fla. 1st DCA 1991).

. It is true that Dr. Wand signed a report sent to claimant’s group health insurer containing a check mark indicating that the claimant’s "condition” was not related to her employment, and CTS was among the conditions listed on the form. Dr. Wand, however, denied filling in the information on the form, and the JCC’s order fails to resolve the discrepancy between Dr. Wand’s testimony and the form. Even if it could be said that the information on the form conflicted with Dr. Wand’s deposition testimony connecting claimant’s limitations with her industrial accident, he was never asked whether the restrictions he imposed on claimant would in any way be affected if it was determined that claimant’s CTS was not caused by her work-related accident. Finally, and most importantly, the JCC’s order never explained why he accepted this item in a medical report over the contrary opinion testimony of not only Dr. Wand, but that of claimant’s primary health provider, Dr. Seles-nick, who treated both of claimant's industrial injuries, performed a carpal tunnel release on claimant's left hand and, without any uncertainty, opined that the CTS in her left wrist resulted from her compensable injury.